**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KARA ULRICH | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LANCASTER GENERAL HEALTH | : | |
| d/b/a PENN MEDICINE LANCASTER | : | |
| GENERAL HEALTH | : | NO. 22-4945 |

**O P I N I O N**

SCOTT W. REID                                        DATE:  April 13, 2023
UNITED STATES MAGISTRATE JUDGE

Kara Ulrich ("Ulrich") has brought this suit under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000(e) *et seq*., and the Pennsylvania Human Relations Act ("PCRA"), 43 P.S. §951 *et seq.*  She claims that her employer, Lancaster General Health ("LGH") discriminated against her on the basis of her religion in requiring her, as a nurse unvaccinated against COVID, to submit twice weekly to COVID testing.

LGH has filed a motion under Fed. R. Civ. Pr. 12(b)(6) to dismiss Ulrich's Complaint for failure to state a claim upon which relief can be granted.  For the reasons set forth below, I will grant LGH's motion.

I.      *Factual and Procedural Background*

As alleged in her Complaint, Ulrich is a Christian.  Complaint at ¶1.  She is also a Registered Nurse, and was employed by LGH until she resigned in September 2021.  *Id*. at ¶6. In October 2020, LGH granted Ulrich a religious exemption to its influenza vaccine requirement. *Id*. at ¶7.  On July 21, 2021, LGH granted her a religious exemption from its requirement that all health system employees become vaccinated against COVID.  *Id*. at ¶9.

When LGH granted Ulrich's religious exemption from the COVID vaccine, it told her: "Efforts will be now be made to reasonably accommodate your exemption while maintaining a safe working environment," and that she would "be contacted shortly regarding the accommodation process." *Id*. at ¶9. Slightly under a month later, on August 19, 2021, LGH informed Ulrich that she would be required to undergo mandatory COVID testing twice per week. *Id*. at ¶11. LGH's Screening Testing Program provided that "refusal to participate in the LGH Screening Testing Program, including refusal to acknowledge the LGH COVID-19 Screening Test Program, will result in termination from employment for LGH employees and administrative dismissal from the medical staff for providers." *Id*. at ¶12.

On August 24, 2021, Ulrich submitted a seven-page letter in which she requested an exemption from the COVID testing requirement as a religious accommodation. *Id*. at ¶13. It included a section entitled "Conflict With My Beliefs." This section reads, in its entirety:

> I have prayerfully considered the standards set forth by UPHS, with specific concern for the SARS-Cov-2 testing required twice weekly, regardless of symptom status. Such a requirement would violate the very religious basis on which my exemption was predicated and ultimately approved by UPHS. My request for religious exemption from this mandate was based on my religious beliefs as a Bible-believing Christian. As outlined in my exemption statement, a component of my religious faith is that my body is a temple of the Holy Spirit and any medical interventions which I consider must comport with that fundamental religious belief. As such, what I put in my body and how I treat it must comport with the commandment in scripture to treat my body in a manner which adheres to this reality and respects it highly. *"Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God? You are not your own; you were bought at a price. Therefore honor God with your bodies."* 1 Corinthians 6:19-20. It would be a violation of my belief to subject my body to such testing – I believe such frequent and possibly invasive testing, depending on the type of testing used, becomes degrading and ritualistic, particularly in the absence of any redeeming medicinal benefit to my physical well-being, and is unfitting when I am to treat my body as a temple of the Holy Spirit, as the verse above commands.

> My supporting documentation provided with my exemption request clearly and emphatically outlined the premise of my sincerely held religious beliefs and the great care and diligence I take in preserving my own well-being. This element of my religious beliefs prohibits any actions or treatment of my body which could bring potential harm,

introduce harmful substances, cause adverse health effects or endanger my well-being, or in any way disrespect or dishonor my body or violate my God-given liberty to choose what I allow to enter my body and subject my body to. To be compelled to undergo such testing in the absence of any symptomatic indication of illness certainly does not act in furtherance of this belief. Such testing would not serve to reflect honor or trust in God, who created my body. *"Therefore, I urge you, brothers and sisters, in view of God's mercy, to offer your bodies as a living sacrifice, holy and pleasing to God—this is your true and proper worship."* Romans 12:1. This scripture makes it clear that I am to treat my body in a way that demonstrates trust, honor, respect and submission to God. Subjecting my body to such testing as outlined by UPHS would certainly not demonstrate that I am trusting the Holy Spirit rather than medical professionals to preserve my physical health; rather, it is evidence of a fearful and reactive approach to medicine which is not in alignment with the Spirit that lives in me as a Christian. *"For God gave us a spirit not of fear but of power and love and self-control."* 2 Timothy 1:7.

I respectfully object as a matter of my faith to such testing as a condition of my continued employment with UPHS. God has given me liberty to live according to His calling on my life and in a manner that honors and reveres him. Being tested for the SARSCov-2 virus twice each week for an indefinite period of time by the sole determination of UPHS and agnostic to the presence of symptoms inevitably stands to be a continual source of anxiety, control and fear over the accuracy of the testing and results in addition to the concerns already outlined. Requiring this of me would conflict with the command to avoid such control and limitations on my ability to exercise bodily autonomy. *"It is for freedom that Christ has set us free. Stand firm, then, and do not let yourselves be burdened again by a yoke of slavery."* Galatians 5:1.

Ulrich Letter of August 24, 2021, attached as Exhibit C to LGH's *Motion to Dismiss*.

In another part of the August 24, 2021, Letter, Ulrich objected to LGH's failure to engage in an interactive negotiation process with her, and suggested that masking, social distancing and "other mitigation measures" were sufficient without COVID testing. *Id*.

On August 31, 2021, Ulrich's request for a religious exemption to COVID testing was denied. *Id*. at ¶15. LGH asserted as grounds for its denial "the significant health and safety risks exemption would create." *Id*. at ¶16. According to Ulrich, she "sought the accommodation of a transfer to another position or the granting of a leave of absence so that she could seek another position with Defendant, but those requests were also denied without any engagement in an interactive process." *Id*. at ¶19.

Ulrich submitted her resignation on September 2, 2021. *Id*. at ¶19. She maintains that this constituted a constructive dismissal. *Id*. Her last day of work for LGH was September 29, 2021. *Id*. at ¶21.

After exhausting her EEOC administrative procedures, Ulrich filed this action on December 13, 2022. On February 23, 2023, LGH filed a Motion to Dismiss under Fed. R. Civ. Pr. 12(b)(6). Instead of responding, Ulrich filed an Amended Complaint on March 10, 2023. In it, she alleges, with respect to her religious beliefs:

> Plaintiff is a practicing Christian and member of a Christian church with a sincere religious faith grounded in scripture and God's directives involving fundamental beliefs about how one should rely upon His providence and care and not submit to impositions such as the testing requirement Defendant sought to impose on Plaintiff regardless of whether she had any symptoms of COVID or not. Plaintiff believed that such mandatory testing divorced from evidence or sign of infection was "degrading and ritualistic" and, as such, had a quasi-religious dimension which was contrary to her Christian faith, since such ritualistic actions should be directed toward honoring God only. Thus, Defendant's mandatory testing requirement made Plaintiff feel as if she was being subjected to, and made to participate in, the impositions of a secular religion divorced from any link to God, to whom alone all religious observance is due.

*Amended Complaint* at ¶14.

On March 13, 2023, LGH filed a new Motion to Dismiss under Fed. R. Civ. Pr. 12(b)(6). In it, LGH argues that (1) Ulrich's objections to COVID testing are not religious beliefs protected by Title VII; (2) Ulrich has failed to allege facts demonstrating that she sincerely held religious objections to COVID testing; and (3) accommodating Ulrich's alleged religious objections would cause LGH undue hardship.

II.     *Relevant Legal Standard*

    A.     *Dismissal Under Rule 12(b)(6)*

Federal Rule 12(b)(6) permits a defendant to move for dismissal of a claim where a plaintiff has failed to state a claim upon which relief can be granted.  The present standard for summary dismissal of a complaint that fails to state a claim was set forth by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Prior to these decisions, a district court could dismiss a complaint for failure to state a claim only if it failed to contain a bare recitation of a claim's legal elements.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  In *Twombly*, however, the United States Supreme Court decided that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555.  Instead, a court need not accept as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  556 U.S. at 678.  Further, a complaint must show – and not merely allege – that the pleader is entitled to relief, by setting forth sufficient factual matter to show that a claim is plausible.  *Id*. at 679.

As the Court of Appeals for the Third Circuit has explained:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complainant's well-pleaded facts as true, but may disregard any legal conclusions.  *Id*.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  [*Iqbal* at 129 S. Ct.] 1950.  In other words, a complaint must do more than allege a plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  *See Phillips* [*v. County of Allegheny*], 515 F.3d [224] at 234-5 [3d. Cir. 2008].

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

The District Court's "plausibility determination" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*., quoting *Iqbal* at 129 S. Ct. 1949.

Even after *Twombly*, however, a plaintiff is not required to establish the elements of a *prima facie* case in a complaint, but need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Fowler*, at 578 F.3d 213. An evidentiary standard is not a proper measure of whether a complaint fails to state a claim. *Id*. Thus, in *Fowler*, the Third Circuit Court of Appeals reversed the decision of a District Court which dismissed a disability complaint on the basis that the plaintiff would not be able to prove she was disabled: "At the pleading stage, ... Fowler's allegation regarding disability is sufficient." *Id*. at 214.

B.     *Religious Discrimination Under Title VII*

Under Title VII, it is unlawful for an employer to discriminate against an individual because of that individual's religion. 42 U.S.C. §2000e-2(a)(1). Title VII  provides that "the term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. §2000e(j).

In order to establish religious discrimination under Title VII, an employee must show that (1) she held a sincere religious belief that conflicted with a job requirement; (2) she informed her employer of the conflict, and (3) she was disciplined for failing to comply with the conflicting requirement. *Fallon v. Mercy Catholic Medical Center of Southeastern PA*, 877 F.3d 487, 490 (3d Cir. 2017).

The Court of Appeals for the Third Circuit has determined that, in evaluating whether a belief can be termed "religious," as opposed to an "isolated moral teaching" or a philosophical belief, a judge must determine whether it "addresses fundamental and ultimate questions having to do with deep and imponderable matters," whether it is "comprehensive in nature," and whether it is accompanied by "certain formal and external signs." *Fallon*, at 877 F.3d 491, *quoting Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981).

Religious discrimination claims under the PHRA are analyzed under the same standard as Title VII claims. *Miller v. Tithonus Tyrone, L.P.*, Civ. A. 20-31, 2020 WL 2065941 at *3 (W.D. Pa. Apr. 29, 2020), *citing Wilkerson v. New Media Tech. Charter Sch. Inc.*, 552 F.3d 315, 318-19 (3d Cir. 1996); and see *Bullock v. City of Philadelphia*, Civ. A. 19-1183, 2020 WL 4365601 at *7 (E.D. Pa. July 30, 2020).

III.     *Discussion*

A.       *Ulrich's Objections to COVID Testing are not Religious Under Title VII*

Before considering the sincerity of Ulrich's beliefs, the Court must initially determine whether Ulrich's alleged opposition to COVID testing is based on religion, and is therefore protectable under Title VII. *Fallon*, *supra*, at 877 F.3d 490. Having considered Ulrich's pleadings in light of the relevant law, this Court has decided that it is not.

This is undoubtedly a "most delicate question." *Africa*, *supra*, at 662 F.2d 1031. The Court of Appeals for the Third Circuit has acknowledged that "few tasks that confront a court require more circumspection than that of determining whether a particular set of ideas constitutes a religion." *Fallon*, *supra*, *quoting Africa*, *supra*. At the same time, the Court of Appeals for the Third Circuit recognizes that the very concept of ordered liberty precludes allowing a person "a blanket privilege" to "make his own standards on matters of conduct in which society as a whole

7

has important interests." *Africa*, *supra*, quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215-16

(1972).  Thus, the *Africa* court accepted that the plaintiff's beliefs were deeply held, but found

they were not "religious," but rather "philosophical and personal."  662 F.2d at 1034-5.

On this basis of this analysis, courts have not accepted the proposition that Title VII

protects what a plaintiff essentially asserts is a divinely granted right to pick and choose.  The

*Africa* court wrote:

> The notion that all of life's activities can be cloaked with religious significance is, of
> course, ... [not] foreign to .. established religions.  Such a notion by itself, however,
> cannot transform an otherwise secular, one-dimensional philosophy into a comprehensive
> theological system.  It is one thing to believe that, because of one's religion, day-to-day
> living takes on added meaning and importance.  It is altogether different, however, to
> contend that certain ideas should be declared religious and therefore accorded first
> amendment protection from state interference merely because an individual alleges that
> his life is wholly governed by those ideas.  We decline to adopt such a self-defining
> approach to the definition-of-religion problem.

662 F.2d at 1035.  Although the *Africa* decision pertained to the First Amendment, it has

frequently been cited in Title VII cases.

Particularly on point is *Finkbeiner v. Geisinger Clinic*, where the District Court for the

Middle District of Pennsylvania rejected a plaintiff's claim that COVID testing violated Title VII

where she claimed she had a "'God-given right to make [her] own choices'" which, the court

added "implicitly, her employer must unfailingly respect,"  because it would amount to "a

blanket privilege" and a "limitless excuse for avoiding all unwanted obligations."  Civ. A. No.

21-1903, 2022 WL 3702004 at **3-4 (M.D. Pa. Aug. 26, 2022), *quoting Africa*, *supra*, at 662

F.2d 1030, 1031.  The *Finkbeiner* court concluded:  "Though fungible enough to cover anything

that Finkbeiner trains it on, this belief is 'an isolated moral teaching' ... not a comprehensive

system of beliefs about fundamental or ultimate matters."  *Id*., *citing Fallon* at 877 F.3d 492.

On a similar basis, the Honorable Mitchell Goldberg of this District rejected a Title VII

challenge to a school COVID-prevention masking requirement:

> Even if I were to accept that Ms. Geerlings sincerely believes the body is a temple and
> should not be harmed, it would be a step too far to count everything she believes about
> healthy living as a religious practice.  The notion that we should not harm our bodies is
> ubiquitous in religious teaching, but a "concern that [a treatment] may do more harm than
> good[] is a medical belief, not a religious one."  [*Fallon*, 877 F.3d at 492].  Even though
> the two may sometimes overlap, such as where a prohibition on eating pork serves both
> sanitary and spiritual ends, it takes more than a generalized aversion to harming the body
> to nudge a practice over the line from medical to religious.

*Geerlings v. Tredyffrin/Easttown School District*, Civ. A. No. 21-4024, 2021 WL 4399672 at *7

(E.D. Pa. Sep. 27, 2021).

Much of the "Conflict With My Beliefs" section of Ulrich's August 24, 2021, letter falls

within the same category of the beliefs identified in *Africa*, *Finkbeiner*, and *Geerlings*.  Her

citation to a "religious faith" that her body is "a temple of the Holy Spirit," and assertion that this

gives her the right to determine which "medical interventions" "comport with" this

commandment, is, as in *Finkbeiner*, "fungible enough to cover anything she trains it on."  Her

reliance upon a divine "command ... to exercise bodily autonomy," and assertion that "God has

given [her] liberty to live according to live according to His calling," asserts, as in *Finkbeiner*, a

"blanket privilege" where she alone is the arbiter for decisions which she expects her employer

to "unfailingly respect."  The *Africa* court specifically rejected this "self-defining approach" to

religion.

Ulrich's attempt to avoid testing which she argues "could bring potential harm, introduce

harmful substances, cause adverse health effects or endanger [her] wellbeing," and her argument

that COVID testing would cause her "anxiety," clearly state medical concerns which she

attempts to "cloak with religious significance," as in *Africa*.  As in *Geerlings*, even assuming

Ulrich's sincere belief, it would be "a step too far" to count everything Ulrich believes about health as a religious practice.

Nor can I accept Ulrich's suggestion that COVID testing is "ritualistic," and – in the words of her Amended Complaint – constitutes participation in a "secular religion." The practical, religion-neutral, function of COVID testing for a hospital nurse is patently obvious. COVID testing does not rely on faith or a mystical belief regarding the testing procedure or its results. It has no more "quasi-religious" element than any other areligious procedure which involves the repetition of certain steps in the same order, such as toothbrushing, or the handwashing "ritual" performed by restaurant workers after they use the washroom.

Because Ulrich has not alleged discrimination on the basis of a religious belief, she has not set forth a sufficient case of religious discrimination under Title VII or PHRA. She has already amended her Complaint once, and has therefore had several opportunities to explain fully the basis upon which she sought an exemption from LGH's COVID testing requirement. Certainly, discovery is not needed to develop the issue of Ulrich's own thoughts and beliefs. On these facts, dismissal of her Amended Complaint with prejudice is appropriate.

      B.    *A Sincerely Held Belief*

Since Ulrich's Amended Complaint will be dismissed for failure to state a Title VII or PHRA claim upon which relief can be granted, it is not necessary to discuss whether Ulrich has pled facts necessary to show a sincerely held belief. I note, however, that I would not grant a 12(b)(6) motion to dismiss on this basis.

LGH relies on *Aukamp-Corcoran v. Lancaster General Hospital*, Civ. A. No. 19-5734, 2022 WL 507479 (E.D. Pa. Feb. 18, 2022). There, the Honorable Jeffrey L. Schmehl granted summary judgment in favor of LGH in a Title VII case on the basis that the plaintiff had not

shown that she sincerely held a religious belief precluding influenza vaccination.  However, it is significant that *Aukamp-Corcoran* was a summary judgment decision, and relied upon discovery which strongly suggested that the plaintiff's religious claim was insincere.[1]  Here, by contrast, LGH has filed a 12(b)(6) motion to dismiss, where only the parties' pleadings may be considered.  The *Aukamp-Corcoran* decision is, therefore, inapposite.

       C.     *Undue Hardship*

Similarly, it is not necessary to discuss whether LGH can show that accommodating Ulrich's request to forego COVID testing would cause it undue hardship, since this case will be dismissed on other grounds.  Nevertheless, I note that Ulrich has raised issues regarding the practicability of reassigning her to remote work or other work with no patient contact.

These are issues which could not be resolved without the consideration of evidence beyond the pleadings, which is not available to the Court on a motion to dismiss under Fed. R. Civ. Pr. 26(b)(6).

IV.     *Conclusion*

For the reasons set forth above, the undersigned will enter an Order of this date, dismissing Ulrich's Complaint with prejudice.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE

---

[1] The *Aukamp-Corcoran* plaintiff "consulted a secular antivaccination Facebook group whose members encouraged her to submit a religion-based exemption request" in comments such as "What about a religious exemption[?] My work HAD to accept it" and "Get a religious exemption.  It's so very easy."  2022 WL 507479 at **2, 5.  Also, the plaintiff "did not request a religious exemption until after she unsuccessfully petitioned her midwife and her medical doctor for a medical-based exemption from the vaccination requirement."  *Id*. at *4.